**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**ROBERT FELLENZ, JR.,**

Plaintiff,

vs.                                                               Hon.
                                                                      Case No. 17-

**HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,**
a Connecticut corporation,

Defendant.

_____/

<u>**COMPLAINT**</u>

Plaintiff, ROBERT FELLENZ, JR., through his attorneys, ILANA S. WILENKIN and FELDHEIM & WILENKIN, P.C., complains against the above-named Defendant as follows:

### I.       Jurisdiction and Venue

1)      This Court's jurisdiction exists under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically, 29 U.S.C. §§ 1132(e)(1) and 1132(f), which provisions grant this Court the jurisdiction to hear civil actions to recover benefits due under the terms of an employee welfare benefit plan.

2)      The subject welfare benefit plan consists of a group long-term disability insurance policy sponsored by Roush Enterprises, Inc. for the benefit of its employees, including Plaintiff ("Mr. Fellenz"), which is underwritten and administered by Hartford Life and Accident Insurance Company ("The Hartford").

3)      29 U.S.C. § 1133 provides a mechanism for the administrative or internal appeal of benefit denials.  Mr. Fellenz has either exhausted all of his appeals or has been

denied access to a meaningful and/or full and fair pre-suit appellate review. This matter is ripe for juridical review.

4)       Pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391, venue is proper in the Eastern District of Michigan.

## II.       Nature of Action

5)       This is a claim seeking disability income benefits pursuant to the Roush Enterprises, Inc. Long-Term Disability Plan ("the Plan") and is being brought pursuant to § 502(a)(1)(B) of ERISA - 29 U.S.C. § 1132(a)(1)(B).

## III.       The Parties

6)       Mr. Fellenz is 37 years-of-age. He was, and continues to remain, a resident of Dearborn, Michigan.

7)       The Plan is an employee benefit plan sponsored by Roush Enterprises, Inc for the benefit of its employees. Upon information and belief, The Hartford underwrites and administers the Plan. The Hartford is a Connecticut corporation, with its resident agent being: The Corporation Company, 40600 Ann Arbor Rd., E., Suite 201, Plymouth, MI 48170-4675, (734) 983-9042.

8)       During all relevant times, the Plan constituted an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1), and, incidental to his employment, Mr. Fellenz received coverage under the same as a "participant," as defined by 29 U.S.C. § 1002(7). This claim relates to benefits due under the above-described plan(s).

## IV.       Factual Statement/Allegations

9)     Mr. Fellenz began working for Roush Enterprises, Inc. as an Instrumentation Tech on March 21, 2011.  He stopped working on or about June 16, 2014 due to disabling depression and anxiety.

10)    Mr. Fellenz returned to Roush Enterprises, Inc. on or about September 16, 2014 and worked until approximately October 14, 2014, at which time he ceased employment due to his inability to perform all of the material and substantial duties of his own occupation.

11)    During all relevant periods, Mr. Fellenz has not engaged in any substantial, gainful activity.

12)    Subsequent to his last day of work, Mr. Fellenz applied to Sun Life/Roush Enterprises, Inc. to begin receiving short-term disability benefits, which claim Sun Life denied on July 22, 2015.

13)    On November 3, 2015, Mr. Fellenz appealed Sun Life's denial, which included the following medical evidence:

### A.     Sun Life - STD Medical Evidence

14)    Mr. Fellenz treated with Manual Dumlao, M.D. on April 17, 2013 for complaints of anxiety.  The note is handwritten but indicates: "affect is blunted, anxious . . . Insight is fair to limited." (Ex. 1 of Sun Life Administrative Appeal (11/3/15))

15)    On May 21, 2013, Dr. Dumlao treated Mr. Fellenz and noted: "Anxious/panic attacks . . . MDD/Panic Disorder." (Ex. 1 of Sun Life Administrative Appeal (11/3/15))

16)    On March 20, 2014, Dr. Dumlao saw Mr. Fellenz and noted the following:

> Here for follow up of depression.  He feels the worst he ever felt.
> . . We talked about why he has not followed up since last May.
> Could not say other than he did not feel very well and was losing
> faith in psychiatry.  We talked about changing his medication, i.e.,
> making a change with Effexor.
>
> He is working 70 hours weekly.  Was saying he has [sic] not
> getting through a normal week but feels he should be able to
> work 70 hour weeks . . . Affect is restricted, depressed, tense,
> irritable and anxious . . .
>
> Long discussion regarding my strong recommendation and his
> acknowledgement of need to reduce his work hours to more
> manageable 40 to 50 hours from 70 or more.  He agrees this leads
> to more stress, anxiety, and his guilt regarding not being a good
> father.
>
> RTC 7 to 10 days: He is reluctant due to his fear of losing his job.
> He refused mloa or intermittent mloa for the same reasons. (Ex.
> 1 of Sun Life Administrative Appeal (11/3/15))

17)     On November 13, 2014, Dr. Jorge prescribed Xanax and Xanax ER. (Ex. 2
of Sun Life Administrative Appeal (11/3/15))

18)     On December 17, 2014, January 15, 2015 & February 9, 2015, Mr. Fellenz
saw Dr. Jorge for prescription refills - Xanax and Ambien. (Ex. 2 of Sun Life
Administrative Appeal (11/3/15))

19)     On March 5, 2015, Mr. Fellenz reported to Dr. Jorge that he could not eat
and could not control his body temperature.  Dr. Jorge renewed Mr. Fellenz's Xanax and
Ambien prescriptions. (Ex. 2 of Sun Life Administrative Appeal (11/3/15))

20)     On April 28, 2015, Mr. Fellenz saw Dr. Jorge, at which time he informed
him that he was scheduled for a U of M psychiatric evaluation.  Dr. Jorge renewed Mr.
Fellenz's Xanax prescriptions. (Ex. 2 of Sun Life Administrative Appeal (11/3/15))

21)   On 5/5/15, Mr. Fellenz was evaluated by U of M Ambulatory Psychiatry,

Ryan Edwards, M.D.:

> GLOBAL IMPRESSION (**for historical review**): *After comprehensive interview today, Mr. Fellenz gives a complicated history of life-long anxiety symptoms that not clearly associated with any discrete Axis I disorder, though Generalized  Anxiety Disorder should be kept in mind in an effort to guide treatment given that some features of his suffering taking on the ruminative characteristics of GAD.  His described discrete episodes of anxiety are not consistent with panic attacks.  Rather, his anxiety symptoms seem deeply enmeshed with his physical perception of pain, and poor levels of distress tolerance with likely developmental roots (unpredictable, emotionally abusive family structure), which have resulted in an anxiety that has become engrained in his personality structure.  He has poor psychological mindedness and a difficult time articulating  his distress.*
>
> *Regardless of etiology, his anxiety symptoms are severe and debilitating with direct consequences in his personal and professional life.  He has tried a number of medications in the past with minimal success (though doses/durations could not be confirmed today).  Also, we are concerned that his high intake of xanax may be contributing to his worsening anxiety over the past year given the short half-life of this medication and propensity for him to utilize drugs as a primary coping strategy for his distress.*
>
> ASSESSMENT: **Little change from initial assessment above**; anxiety and depressive symptoms continue, worsened by recent stressors.  See HPI for discussion of safety.  We spent a great deal of time today discussing treatment options and our recommendations.  He voiced understanding that xanax should not be taken long-term (and not all medications are like xanax), and therapy should take priority in his treatment.  He was provided the comprehensive  consult recs below, and agreed for me to send these to his PCP as well. (Ex. 3 of Sun Life Administrative Appeal (11/3/15)) (Emphasis added with regard to the *Assessment* paragraph)

22)   On May 11, 2015, Mr. Fellenz returned to Dr. Jorge, who prescribed

Xanax and Lyrica. (Ex. 2 of Sun Life Administrative Appeal (11/3/15))

23)    On August 13, 2015, Dr. Jorge treated Mr. Fellenz and prescribed Lyrica and Vistaril. (Ex. 2 of Sun Life Administrative Appeal (11/3/15))

24)    During June 2014 through May 2015, Mr. Fellenz treated with Linda VanAcker, MSW, which records were provided to Sun Life prior to Mr. Fellenz's 11/3/15 Administrative Appeal.

25)    Mr. Fellenz provided Sun Life treatment records from New Oakland for the period June 2014 through May 2015.  (Ex. 4 of Sun Life Administrative Appeal (11/3/15))

26)    On October 23, 2015, Dr. Jorge prepared a report outlining Mr. Fellenz's history as well as voicing his support for Mr. Fellenz's disability and entitlement to benefits:

> This letter is to certify that Mr. Fellenz Jr has been under my care since he was born.  In the last 4 to 5 years he has been suffering with severe depression and I have recommended Mr. Fellenz Jr to go see Dr. M. Dumlao a local  psychiatrist. Mr. Fellenz Jr has been taking multi antidepressant medications with none favorable results.  He has visited few family counselors and psychologists trying to find a resolution for his serious problem.
>
> Obviously l was treating him while he was in between psychologists and psychiatrists with multiple neuroleptic medications and mileu [sic] (lengthy conversations).
>
> After reviewing his chart, I had strongly advised Mr. Fellenz Jr not to return to work (sept 2014) but at his insistence and his lace [sic] of economical means to  take care of his family I have compromised with a trial period that ended after a few weeks of work.
>
> It is my personal opinion and my belief that Mr. Fellenz Jr has been suffering from severe depression and anxiety since teenager years and he will remain disabled and unable to secure any gainful employment and for sure not all of the material and substantial

duties in his present occupation. (Ex. 5 of Sun Life Administrative Appeal (11/3/15))

27)   On December 15, 2015, Sun Life reversed its July 22, 2015 denial and approved the payment of short-term disability benefits for the policy's maximum benefit period, June 20, 2014 through December 25, 2014.

28)   As the long-term disability insurer, The Hartford should have begun paying Mr. Fellenz long-term disability benefits on or about December 26, 2014.

29)   On March 24, 2016, The Hartford denied Mr. Fellenz's long-term disability claim because: "We have completed our review of your claim for benefits and have determined that we have not received the [sic] sufficient proof of loss to complete our investigation."

30)   On August 3, 2016, Mr. Fellenz appealed The Hartford's March 24, 2016 denial by presenting the following medical evidence:

### B.   The Hartford - LTD Medical Evidence (Part 1)

31)   Mr. Fellenz was admitted to Brighton Center for Recovery on December 24, 2015 to try and stop taking Xanax, which had been prescribed for 8 years.  His other diagnoses included: depression, anxiety disorder, and chronic pain.  The following are excerpts from treatment notes.

32)   On December 28, 2015, Mr. Fellenz met with a Brighton treater regarding his Xanax dependency and associated mental health issues:

> 'Psychiatrist at Face to Face, New Oakland can't/won't lower dosage of Klonopin and Xanax dosage anymore and I couldn't do it safely on my own.  In the last 1 and 1/2 years, I have been trying to get off Xanax.'

7

'Even as a toddler, every time father walked into house, behavior unpredictable.  (only much later learned of his diagnosis Bipolar disorder) verbally, emotionally and physically abusive . . . Afraid I might knock things over, trip over myself, hypervigilance.  I feel I may react angrily and aggressively if I felt threatened, my personal space was violated.  Extremely uncomfortable with strangers coming up to me to shake my hands, pat me or try to hug me.'

\*       \*       \*

Forced to be a Jehovah's Witness.  Picked on at school. (Ex. 4 of The Hartford 8/3/16 Administrative Appeal)

33)     On December 29, 2015, a Brighton treater noted the following deficits:

Poor appetite.  Pt. refusing to go to cafeteria.  severe social anxiety.  Pt. reports difficulty with swallowing solid foods.  Have lost 50-55 lbs in the last 2-3 months.  'I have been relying on Boost supplements and a gallon of milk daily.'

Impulse Control:  anger

Social Interaction:  extremely avoidant

Axis I: Clinical Disorders
Other depressive episodes
Social Phobia
(N) Risk for self-directed harm R/T depressed mood, haplessness
(N) Anxiety related to: Anticipated/actual pain
Post-traumatic stress disorder, unspecified
Sedative, hypnotic or anxiolytic dependence with withdrawal, uncomplicated (N) Potential for Withdrawal
Major Depressive Affective Disorder, Recurrent
Cannabis dependence, uncomplicated

Axis II: Personality Disorders, Mental Retardation
Anxiety disorder, unspecified

Axis IV: Psychosocial and Environmental Problems
Personal history of adult physical and sexual abuse Grief/Loss Unresolved
(N) Knowledge deficit
High Relapse Potential

(N) Alteration in Family Processes R/T addiction. (Ex. 4 of
The Hartford 8/3/16 Administrative Appeal)

34)   On December 30, 2015, Mr. Fellenz reported to a Brighton treater during his session that he felt worse after taking morning medications.   He reported feeling depressed, withdrawn, isolated, anxious, hypervigilant, tense, etc. (Ex. 4 of The Hartford 8/3/16 Administrative Appeal)

35)   On December 31, 2015, Mr. Fellenz was agitated and threatened to harm Brighton staff when directed to attend programming.   He was highly anxious and hypervigilant:

> 'This feels like high school all over again.  I am being forced to do stuff.  I had been in bed for more than 2 months after physically and mentally running myself into the ground.  This is too drastic a change - attending programming all day.' (Ex. 4 of   The Hartford 8/3/16 Administrative Appeal)

36)   On January 4, 2016, Mr. Fellenz's Brighton session involved the following:

> Patient reports he has been hospitalized 3 times for severe headaches, has been in outpatient treatment at the Michigan head pain Institute, has been diagnosed with tension headaches.
>
> Extremely avoidant, fearful [of social interaction.]
> Ruminative preoccupation with anxiety symptoms and somatic complaints.
>
> Patient reports feeling extremely anxious and agitated.  Limited insight.   PTSD chronic social anxiety. (Ex. 4 of The Hartford 8/3/16 Administrative Appeal)

37)   As part of Mr. Fellenz's appeal, he presented The Hartford with medical evidence from Eastwood Clinics, specifically, Vikram Yeragani, M.D., who offered the following analysis and opinions:

38)     On January 13, 2016, subsequent to his treatment for benzodiazepine dependence at Brighton Center for Recovery, Dr. Yeragani evaluated Mr. Fellenz and offered the following diagnoses:

> Axis I:   G.A.D., major depression - recurrent, severe
>
> Axis II:  -
>
> Axis III: Migraines
>
> Axis IV: Illegible (Ex. 3 of The Hartford 8/3/16 Administrative Appeal)

39)     Also on January 13, 2016, Dr. Yeragani prescribed Inderal, Vistaril, Buspar, Abilify, and another handwritten medication that was difficult to decipher. *Id.*

40)     Mr. Fellenz treated with Dr. Yeragani on February 2, 2016 for a medication review. (Ex. 3 of The Hartford 8/3/16 Administrative Appeal)

41)     On March 1, 2016, Dr. Yeragani treated Mr. Fellenz for medication review and management. (Ex. 3 of The Hartford 8/3/16 Administrative Appeal)

42)     On April 12, 2016, Dr. Yeragani noted that Mr. Fellenz was "doing poorly" and increased his morning Abilify dose. (Ex. 3 of The Hartford 8/3/16 Administrative Appeal)

43)     Mr. Fellenz also submitted for The Hartford's review treatment records created by New Oakland Family Center, primarily authored by Robert Bringman, M.S.W.

44)     On February 10, 2016, Mr. Fellenz reported to Mr. Bringman that he felt depressed.  Mr. Fellenz showed a constricted affect and slowed psychomotor activity. He and Mr. Bringman discussed various topics, and Mr. Fellenz stated that his sleep pattern and his appetite had improved.  Mr. Fellenz also reported feeling increased

energy, mood, and motivation.   Despite this modest improvement, Mr. Bringman assessed a 50 GAF. (Ex. 1 of The Hartford 8/3/16 Administrative Appeal)

45)     On February 24, 2016, Mr. Fellenz saw Mr. Bringman, who noted that Mr. Fellenz was depressed, with constricted affect.   They discussed various topics and Mr. Fellenz reported feeling better overall, although he was still struggling with many issues. (Ex. 1 of The Hartford 8/3/16 Administrative Appeal)

46)     Mr. Fellenz returned to meet with Mr. Bringman on June 2, 2016, at which time has was depressed, anxious, had a constricted affect, and slowed psychomotor activity.   Contrary to his February sessions, Mr. Fellenz reported eating difficulties, financial difficulties, and was only sleeping 2-3 hours a night.   Therapy was provided and coping skills addressed. (Ex. 1 of The Hartford 8/3/16 Administrative Appeal)

47)     On June 20, 2016, Mr. Fellenz treated with Mr. Bringman for depression, anxiety, anger, dysphoria, anger, etc.   As part of his session, Mr. Fellenz indicated the following:

> I would like to get switched over from Xanax to something else.  I would like to decrease my anxiety, depression, and suicidal ideation.   I want to totally be off the xanax and learn coping skills to deal better with my mood symptoms-anxiety, depression. I want to be able to handle my anxiety-stress better. . . sleep better so I can be prepared to return to work. (Ex. 1 of The Hartford 8/3/16 Administrative Appeal)

48)     On July 6, 2016, Mr. Fellenz treated with Mr. Bringman, who echoed the substance of his June 20, 2016 treatment note. (Ex. 1 of The Hartford 8/3/16 Administrative Appeal)

11

49)     On July 13, 2016, Mr. Bringman wrote a narrative report supporting Mr.

Fellenz's disability, in relevant part stating as follows:

> Mr. Fellenz is currently receiving outpatient mental health
> therapy here [since] June of 2015.  Mr. Fellenz has received
> treatment services in inpatient, outpatient, and partial day
> hospital levels of care.  Currently, Mr. Fellenz is consulting with an
> external psychiatrist for prescribed medication management and
> review.  I should mention that information included in this
> document is based on professional, clinical session contacts.
>
> Mr. Fellenz continues to experience moderate to severe acute
> clinically significant symptoms of anxiety and depression that is
> causing substantial functional impairment.  Based on the severity
> of Mr. Fellenz's clinical symptomatology, it is this writer's
> professional impression that he currently is not able to
> satisfactorily return to work with his employer at this time.
> (Ex. 2 of The Hartford 8/3/16 Administrative Appeal)

50)     On August 12, 2016, The Hartford responded to Mr. Fellenz's appeal by

writing:

> Please refer to the denial letter that was sent to your client on
> March 24, 2016.  That letter stated that some items requested
> during the evaluation of your client's claim had not been received,
> and invited your client to submit those items to the claim office
> for consideration.  The materials that you have now sent appear
> to be a response to that request.  Therefore, we are forwarding
> your letter and attachments to the Claim Office.  They will
> evaluate those materials and will advise you of their decision on
> your client's claim.  If your client's claim is again denied, you will
> have the opportunity to submit an appeal.

51)     On October 14, 2016, The Hartford officially denied Mr. Fellenz's claim

based on the opinion of its reviewing physician, Dr. M. Antionette Acenas:

> We have completed our review of your client's claim for benefits
> and have determined that your client does not meet the policy
> definition of Disability.  Because of this, Long Term Disability
> (LTD) benefits are not payable under the terms of this policy.

\*      \*      \*

Dr. Acenas complete her review based on the medical records and forms within the claim file and phone conversations with Dr. Jorge and Linda VanAcker LCSW.  Based on her review of this information, **Dr. Acenas reported there are no medically supported limitations for the period of June 5, 2014 through December 30, 2016**.  Dr. Acenas stated your client has been seen by several treating providers during the period of June 5, 2014 through December 30, 2016 and **each provider has noted on the mental status exams normal results except for him being anxious, depressed and having an irritable mood.  Dr. Acenas reported the records do not note your client having manifested any psychotic thought distortions, suicidal nor homicidal ideations.  He has consistently maintained intact cognition.  Dr. Acenas also noted though your client was admitted to a partial hospitalization program he was able to maintain a consistently normal mental status exam except for a depressed, anxious and irritable mood.  It was also reported that your client has been maintained on the same medication throughout this time period and his depression and anxiety are not of the severity or intensity that require a higher level of psychiatric intervention such as inpatient hospitalization.  Therefore, Dr. Acenas concluded your client is able to work full time with no restrictions or limitations working 8 hours per day 40 hours per week**. (The Hartford's October 14, 2016 Claim Denial) (Emphasis added)

52)     On January 3, 2017, Mr. Fellenz again appealed The Hartford's adverse

decision and supplemented the already extensive record with the following materials:

### B.     The Hartford - LTD Medical Evidence (Part 2)

53)     Mr. Fellenz presented The Hartford with Sun Life's complete short-term

disability claim file.

54)     On April 12, 2016, Mr. Fellenz saw Dr. Yeragani (Eastwood Clinics) for

ongoing psychiatric/medication management.  At this time, Mr. Fellenz reported feeling

poorly, which state Dr. Yeragani attributed to financial stress.  Dr. Yeragani noted that

Mr. Fellenz's orientation was fair; other faculties were noted as normal.  Dr. Yeragani increased Mr. Fellenz's Abilify dose, noting that Mr. Fellenz was worsening. (Ex. 2 of The Hartford 1/3/17 Administrative Appeal)

55)     Mr. Fellenz returned to Dr. Yeragani on June 17, 2016, complaining of ongoing psychiatric deficits.  Dr. Yeragani's handwriting is difficult to decipher, but he continued to note mood problems. (Ex. 2 of The Hartford 1/3/17 Administrative Appeal)

56)     On July 13, 2016, Mr. Fellenz treated with Mr. Bringman (New Oakland) for chronic depression, anxiety, and inability to function:

> Assessed clts. mood, bx's, relationship quality with family, peers, and functioning levels in tx. areas of concern.  T talked with clt. abt. his pmr in terms of efficacy, se's, and compliance levels.  Clt. shared how he is feeling internally relative to his mood tone and physically.  Assessed clts. sleep, appetite patterns.  Rev.-discussed with clt. his OP goals obj.  **Clt. disclosed he is sleeping 2-3 hrs. per night on avg. and he has lost significant weight = fatigue weakness.  Clt. reports his clinical sx's of anxiety-depression have worsened in freq., sev.= impaired functional impairment**. (Ex. 3 of The Hartford 1/3/17 Administrative Appeal)) (Emphasis added)

57)     Mr. Bringman's notes indicate, among other clinical findings, goals and objectives, the date(s) they were set, and the date(s) set to achieve said goals and objective.  In this batch of records, as well as those previously provided to The Hartford to review, Mr. Fellenz's goals/objectives were established as follows:

> Goal #1
> Effective 6/10/15
> Target Date 6/24/15
> Mr. Fellenz wanted to switch Xanax to a different med and wanted to follow his U of M list.  Mr. Fellenz also wanted to decrease anxiety, depression, and suicidal ideation.
>
> Goal #2

Effective 10/20/15
Target Date12/31/15
I want to totally be off the Xanax and learn coping skills to deal
better with my mood symptoms-anxiety, depression.

A.
-       Robert will consistently comply with his therapy sessions
        and pmr;

-       Robert will engage in therapeutic self disclosure and
        report improved insight into self and clin. dynamics;

-       Robert will be able to report an alleviation of clin. sx. freq.,
        sev. of anxiety depression and increased functioning
        levels - GAF;

-       Robert will be able to report improved sleep, appetite
        patterns;

-       Robert will explore, process emotional, psychol. conflict
        issues that contribute to clin. sx. formulation and levels
        of functional impairment;

-       Robert will verbalize/utilize adaptive coping skills interv.
        strat., self care in dealing with emotional distress
        effectively;

-       Robert will be able to return to work for his employer =
        improve financial aspect of his life;

-       Robert will be able to report improved self image, esteem,
        and improved nature, quality of interpersonal
        relationships;

-       Robert will be able to report an attenuation of acute sx.'s -
        (Xanax withdrawal).

Goal #3
Effective 6/20/16
Target Date 12/31/16
I want to be able to handle my anxiety-stress better . . . sleep
better so I can be prepared to return to work.

A.

15

- Rob will be able to report an alleviation of clinical symptom frequency-severity of anxiety, stress, depression, and improved bio psycho social function;

- Rob will comply toward his therapy and pmr;

- Rob will engage in therapeutic self disclosure and be able to report increased insight into self and clinical dynamics;

- Rob will explore, process emotional psychol. conflict issues, psycho social stressors that contribute to clinical symptom formulation and levels of functional impairment;

- Rob will be able to identify, utilize coping skills, interv. strat. in dealing with anxiety, stress, emotional distress effectively;

- Rob will consult with appropriate professional staff with regard eating based problem issues (dietician, PCP);

- Rob will be able to report improved relationship quality with family, self in terms of his self image-esteem' [Rob] would like to be back working by January. (Ex. 3 of The Hartford 1/3/17 Administrative Appeal)

58)    On August 4, 2016, Mr. Fellenz returned to Mr. Bringman for therapy due to chronic depression. During this session, Mr. Bringman noted the following:

Assessed clts. mood, bx's, relationship quality with family, peers, and functioning levels in tx. areas of concern. I talked with clt. abt. his pmr in terms of efficacy, se's and compliance levels. Clt. shared how he is feeling internally relative to his mood tone and physically. Assessed clts. sleep, appetite patterns. Rev.- discussed with clt. his OP goals obj. **Clt disclosed he is taking 5-6 different psychotropic meds being rx by external doctor. Clt. expressed he would like to d/c pmr under medical supervision. Clt. continues to experience clinically significant sx's of sleep-appetite pattern disruption = weakness, weight loss, fatigue, mood disruption, energy levels, motivation. Clt. verbalized he is experiencing nausea and high levels of anxiety (stomach upset; difficulties swallowing harder foods).** Clt. talked abt. his kids functioning levels . . . Discussed adaptive anxiety, stress mgmt.

> interv. strat (cognitive reframing; relaxation techn.)  (Ex. 3 of The
> Hartford 1/3/17 Administrative Appeal) (Emphasis added)

Also on August 4, 2016, Mr. Fellenz also indicated to Mr. Bringman that he would

like to decrease anxiety, depression, and suicidal ideation. *Id.*

59)     Mr. Fellenz treated with Mr. Bringman on August 16, 2016 for therapy.

He continued to feel depressed and Mr. Bringman noted:

> Assessed clts. mood, bx's, relationship quality with family, peers,
> and functioning levels in tx. areas of concern.  I talked with clt.
> abt. his pmr in terms of efficacy, se's and compliance levels.  Clt.
> shared how he is feeling internally relative to his mood tone and
> physically.   Assessed clts. sleep, appetite patterns.  Rev.
> discussed with clit. his OP goals obj.  Clt. disclosed he is
> progressively sleeping better 3-4 hrs. per night on avg. and day
> naps.  Clt. reports that he is eating more solid foods and gaining
> weight.  Clt. verbalized feeling an improvement in his attitude and
> '"I feel like there is a light at the end of the tunnel."'  Clt.
> stated feeling he has more energy, motivation, and he is more
> active behaviorally. (an alleviation of anxiety, depression.)
> Explored, processed clts. th's feelings while providing psycho
> education and advisement as needed. (Ex. 3 of The Hartford
> 1/3/17 Administrative Appeal))

60)     Mr. Fellenz saw Mr. Bringman on September 2, 2016 for therapy.   Mr.

Fellenz remained depressed and expressed the following feelings/thoughts:

> Clt. reports his sleep patterns are progressively improving (4-5
> hrs. per night), and he is gaining weight to 170 lbs.  Clt.
> additionally reports a dissipation in clinical sx's of anxiety,
> depression. (Clt. continues to wait and see if long term
> med. leave from employer is approved).  Clt. verbalized feeling
> better in terms of his attitude - more hopeful he is getting going
> to return to work by year's end.  Explored processed clts. th's
> feelings centering around his overall functioning
> levels in tx. areas of concern = + progress made. (Ex. 3 of The
> Hartford 1/3/17 Administrative Appeal))

61)    Mr. Fellenz saw Mr. Bringman on September 22, 2016 for ongoing

therapy and remained depressed:

> Clt. disclosed his overall functioning in tx. areas of concern is
> improving but not to a degree of returning to work.  Clt.
> expressed he and his attorney are still awaiting the status of long
> term medical leave from employer - Roush.
> Clt. verbalized he may apply for SSD due to financial based
> reasons (parents are helping clt. financially).  Clt. reports his
> weight is up to 175 lbs., and he is sleeping 4-6 hrs. per night =
> good quality.  Clt. expressed his sx's of anxiety, depression
> continue to dissipate.  Clt. shared th's feelings surrounding various
> therapeutic themes involving: pat abusive relationship with fa;
> death of male friend; relationship quality with kids mo..  Explored,
> processed clts. th's feelings while providing psycho education and
> advisement as needed. (Ex. 3 of The Hartford 1/3/17
> Administrative Appeal)

62)    On September 28, 2016, Mr. Fellenz treated with Dr. Yeragani for

depression and anxiety.  Dr. Yeragani noted that Mr. Fellenz was gaining weight, his

mood continued to be problematic, and his orientation was fair. (Ex. 2 of The Hartford

1/3/17 Administrative Appeal)

63)    On October 13, 2016, Mr. Fellenz treated with Mr. Bringman for ongoing

therapy.  Mr. Bringman noted that Mr. Fellenz was depressed and had a constricted

affect.  He also noted the following:

> Clt. disclosed he is gaining weight, strength, endurance (improved
> appetite patterns and sleep patterns).  Clt. verbalized intent to
> return to work by the first of the year.  Clt. expressed he worries
> much abt. finances, kids, home-work etc.  Engaged in dialogue
> abt. + healthy ways in dealing with worrying th's that trigger
> worsen sx's of anxiety.  Assessed clts. mood, bx.'s relationship
> quality with family, peers, and functioning levels in tx. areas of
> concern.  Clt. expressed he is being more active behaviorally.  Clt.
> stated he may apply for SSD and his long term med. leave is still
> pending.  Explored, processed clts. th's feelings abt. how he is

> functioning overall. (Ex. 3 of The Hartford 1/3/17 Administrative Appeal)

64)   On 12/8/16, Mr. Bringman prepared a report supporting Mr. Fellenz's psychiatric disability, in relevant part, opining as follows:

> Mr. Fellenz as I reported in my last correspondence presented and evidenced clinically significant symptoms of anxiety, and depression in the moderate to severe range causing substantial levels of functional impairment.  In terms of said clinical symptoms reported and evidenced, they were as follows: disrupted concentration-focus; light headedness; panic attack episodes; reduced motivation, energy; isolation, withdrawal behaviors; feelings of helplessness, hopelessness; lethargy; crying spells; disruption in sleep, appetite patterns; weight loss; decreased strength; somatic complaints; dysphoria in mood tone; feelings of sadness; loss of pleasure; negative self depreciating thoughts, worries.  This writer has been seeing Robert for outpatient therapy and in my professional, clinical impressions he was non-functional in terms of being able to work in a satisfactory capacity due to the symptom-syndrome levels of severity at that time period. In addition, Robert has been seeing a psychiatrist for prescribed medication management and review along with his PCP and appropriate medical doctor referral to address mentioned physiological complaints, concerns. (Ex. 4 of The Hartford 1/3/17 Administrative Appeal)

65)   Despite providing The Hartford with substantial and compelling evidence supporting Mr. Fellenz's disability through the Plan's maximum benefit period, approximately December 26, 2016, The Hartford upheld its previous denial on February 9, 2017:

> We received a February 3, 2017 report from Dr. Warren Taff, Psychiatrist, with ECN.  Dr. Taff stated your client was hospitalized due to passive suicidal ideation from June 10, 2015 through June 26, 2015 and again from December 24, 2015 through January 5, 2016 which would support his Disability for these time periods. However, **Dr. Taff stated there was no documentation such as behavioral functional assessments or neuropsychological testing to support the need for restrictions/limitations based on Mr.**

19

**Fellenz's anxiety and depression**. Dr. Taff further stated there was evidence of moderate anxiety and depression, however, his mental status examinations have been essentially normal, other than the hospitalization periods noted above. **Dr. Taff stated that the medical evidence documents Mr. Fellenz has a depressed/anxious mood and constricted affect, however, his speech, thought process/content, judgment, language, memory, attention and concentration were essentially normal. He stated there was no indication of any cognitive impairment or inability to perform his activities of daily living due to his depression and anxiety.**

Dr. Taff contacted Dr. Jorge and Mr. Bringman on January 23rd, 26th, and 30th, however, messages had to be left. **Dr. Taff spoke to Dr. Yeragani on January 24, 2017 who stated that Mr. Fellenz has severe depression and is unable to gain weight. Dr. Yeragani stated that although there has been an improvement, Mr. Fellenz is still very anxious and has restrictions of no stressors, such as deadlines and to avoid repetitive tasks that would increase his anxiety. Dr. Taff opined the "medical documentation does not contain objective evidence of the presence of psychiatric symptoms to the severity and intensity to necessitate work activity restrictions, and they do not demonstrate the presence of a functional loss due to a psychiatric condition with the exception of the time periods noted above."** Dr. Taff concluded that Mr. Fellenz would be able to consistently and reliably perform work activities with the exception of the time periods noted above.

Therefore, based on the review of all the medical evidence in your client's file to include the Peer review conducted by Dr. Taff, we find that your client would not have met the definition of Disability from his Occupation. As such, the denial of your client's claim for LTD benefits was appropriate and the claim remains closed.

66)    The Hartford's actions have now foreclosed all avenues of administrative appeal and this matter is ripe for judicial review.

67)    Because valid, objective, and well-supported proofs establish Mr. Fellenz's ongoing disability within the Plan's terms, Mr. Fellenz is entitled to the

20

immediate payment of 24 months of own-occupation long-term disability benefits retroactive to the date they were wrongfully terminated, approximately December 26, 2014 through December 26, 2016.

**WHEREFORE**, based upon the preceding reasons, Plaintiff prays for the following relief:

A)   That this Court enter judgment in Mr. Fellenz's favor against The Hartford and order the immediate payment of his disability income benefits retroactive to the date that benefits were terminated - roughly December 26, 2014 through December 26, 2016;

B)   That this Court order The Hartford to pay Mr. Fellenz judgment interest on all benefits that have accrued post-Complaint-filing through the date of judgment and beyond in accordance with M.C.L. § 600.6013 and 600.6455;

C)   That this Court award attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

D)   That Mr. Fellenz recovers all relief to which he may be entitled, along with the costs of litigation.

Respectfully submitted:

**FELDHEIM & WILENKIN, P.C.**

By:   s/Ilana S. Wilenkin
Ilana S. Wilenkin (P61710)
Plaintiff's Attorney
30300 Northwestern Highway, Suite 108
Farmington Hills, MI 48334-3255
(248) 932-3505; Fax (248) 932-1734
ilana@lawsmf.com

Date:  February 20, 2017